UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JOHN MARTINI,

                       Plaintiff,

    -against-

CITY OF NEW YORK, POLICE OFFICER
SERGIO COPPOLA, Shield No. 05096, Tax
Registry No. Unknown, ASSISTANT CHIEF
BRUCE SMOLKA, Shield No. Unknown, Tax
Registry No. unknown, and JOHN DOES and/or
JANE ROES 2-10, Shield Nos. and Tax Registry
Nos. Unknown,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

COMPLAINT
(Jury Trial Demanded)

05 Civ. 9881

      Plaintiff John Martini, by his attorney Scott A. Korenbaum, Esq., for his complaint, alleges as follows:

INTRODUCTION

      1.     John Martini brings this action pursuant to, among other things, 42 U.S.C. § 1983, to redress the deprivation of his constitutional rights.  More specifically, on August 31, 2004, while lawfully standing on the sidewalk near 19 West 35th Street, in Manhattan, defendant police officer Sergio Coppola arrested him without probable cause.  Defendant Coppola subsequently subjected him to a baseless prosecution when he swore out a false accusatory instrument.

      2.     Mr. Martini also brings this action against defendant Bruce Smolka, a member of the Department holding the position of Assistant Chief.  Defendant Smolka ordered Mr. Martini's arrest even though there was no basis to do so.

      3.     Finally, Mr. Martini brings this action against unknown supervisory members of the Department and the City of New York itself for the deprivation of his federal constitutional rights.

Upon information and belief, the City of New York had a predetermined goal of arresting anybody suspected of demonstrating during the Republican National Convention, the result of which involved the arrests of numbers of persons, like Mr. Martini, who were not engaged in any criminal behavior.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. §§ 1331 and 1343, jurisdiction is proper as Mr. Martini's claims arise under federal law. Pursuant to 28 U.S.C. § 1367, jurisdiction is proper as to the claims of Mr. Martini arising under the common law of the State of New York.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper as the acts complained of occurred in the State of New York, County of New York.

## PARTIES

6. Mr. Martini is a citizen of the United States. He resides in the State of New York, County of New York.

7. Defendant Police Officer Sergio Coppola, Shield No. 05096, Tax Registry No. Unknown, was, at all times relevant herein, a member of the Department. Upon information and belief, at all times relevant herein he was assigned to the Patrol Borough Manhattan South Task Force.

8. Upon information and belief, defendant Coppola is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

9. Defendant Bruce Smolka, Shield No. and Tax Registry No. Unknown, was, at all times relevant herein, a member of the Department holding a supervisory position. Upon information and belief, at all times relevant herein he held the position of Assistant Chief of the Department.

10. Upon information and belief, defendant Smolka is still a member of the NYPD. At all times relevant herein, he acted within the scope of his employment and under color of law.

11. Defendant John Does and/or Jane Roes Nos. 2-10, Shield Nos. and Tax Registry Nos. Unknown, were, at all times relevant herein, members of the Department holding the positions of supervisor or higher.

12. Upon information and belief, John Does and/or Jane Roes Nos. 2-10 are still members of the NYPD. At all times relevant herein, they were acting within the scope of their employment and under color of law.

13. Defendant City of New York is a municipal corporation organized pursuant to the laws of the State of New York. It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York. At all times relevant herein, it was the employer of Coppola, Smolka and defendant Does Nos. 2-10.

## ADMINISTRATIVE PREREQUISITES

14. On November 29, 2004, Mr. Martini filed a timely Notice of Claim with defendant City in the Office of the City Comptroller, in accordance with the General Municipal Law. Following the dismissal of the criminal proceeding against him on or about December 1, 2004, Mr. Martini filed a second timely Notice of Claim with defendant City in the Office of the City Comptroller, in accordance with the General Municipal Law.

15. On or about March 21, 2005, Mr. Martini presented himself for an examination pursuant to General Municipal Law § 50-h.

16. At least thirty days have elapsed since Mr. Martini filed the aforesaid Notice of Claim and adjustment or payment thereof has been neglected or refused. This action is commenced within

one year and 90 days from the date of the occurrences alleged herein, as required under Section 50-i of the General Municipal Law.

## FACTS UNDERLYING THE COMPLAINT

17. On August 31, 2004, at approximately 8:30 p.m., Mr. Martini was on the sidewalk located on the south side of West 35th Street, between 5th and Sixth Avenues. At that time, he had been taking photographs of numerous protestors, police officers and other persons who were present in connection with the Republican National Convention, which was taking place blocks away at Madison Square Garden.

18. At no time was Mr. Martini part of any demonstration. He went to 35th Street alone simply to observe and take photographs of what was transpiring between the police and demonstrators.

19. After spending some time on 35th Street, Mr. Martini, while in the company of some members of the press, sought to leave the area. In response to defendant Smolka's offer to the press to be escorted out of the area, Mr. Martini told him he wanted to leave.

20. Smolka asked Mr. Martini if he had a New York City press identification on him. When Mr. Martini responded in the negative, Smolka told him to stand in a designated area on the sidewalk where he would be arrested with everybody else.

21. Mr. Martini complied with Smolka's order to stand on the sidewalk. A few minutes later, Mr. Martini was arrested. He was asked to turn around, told to place his hands behind his back and placed in plastic handcuffs.

22. About ten minutes later, Mr. Martini, who was one of many persons arrested while on 35th Street, had his photograph taken with his arresting officer, who, upon information and belief,

was defendant Coppola.

23.     At the scene of his arrest, Mr. Martini was placed in a paddy wagon, where he sat for approximately 45 minutes before moving. Mr. Martini was one of approximately 15 arrestees jammed into the paddy wagon.

24.     Ultimately, Mr. Martini was taken to a pier, located on the west side of Manhattan, near the Chelsea pier area. In total, he remained in the paddy wagon, without air conditioning, and in stifling heat, for about one hour and forty five minutes. Simply put, the conditions within the wagon were horrific.

25.     The conditions at the pier were also horrific. Mr. Martini was not fed. The holding facilities at the pier appeared to contain toxic chemicals, thereby increasing the anxiety levels of Mr. Martini and his fellow arrestees.

26.     Ultimately, Mr. Martini remained in police custody for approximately 17 hours. When he arrived at Manhattan Central Booking, he received a Desk Appearance Ticket.

27.     Prior to his release from Central Booking, Mr. Martini was never informed of the reasons why he was arrested. When he appeared in court, he learned that he was charged with two counts of Disorderly Conduct (Penal Law §§ 240.20(5); 240.20(6)) and one count of Parading Without a Permit (Admin. Code § 10.110).

28.     Defendant Coppola signed the accusatory instrument that was filed against Mr. Martini. Coppola knew, or should have known, that the charges against Mr. Martini were baseless. Upon information and belief, Smolka was involved in the decision to prosecute Mr. Martini.

29.     On or about December 1, 2004, the New York County District Attorney's Office dismissed the charges against Mr. Martini on speedy trial grounds, pursuant to CPL § 30.30. In total,

Mr. Martini was required to appear in court three or four times.

30. The arrest of Mr. Martini, like the scores if not hundreds of other persons arrested on West 35th Street, was the product of policies, practices, customs and usages of the City of New York, acting through the NYPD, that were the proximate cause of Mr. Martini's injuries. These policies were promulgated by, upon information and belief, John Does and/or Jane Roes 2-10, and include, among others, (a) the arrest of persons lawfully participating in, observing, or in the vicinity of demonstrations, protests or other forms of public expression on August 31, 2004, during the Republican National Convention; (b) enforcement of an unconstitutional statute, New York City Administrative Code section 10.110, Parading Without a Permit; and (c) the application of that statute to sidewalk marches. Each such policy, practice, custom and usage caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

FIRST CLAIM FOR RELIEF
(Coppola and Smolka–False Arrest)

31. Plaintiff John Martini repeats and realleges the allegations contained in paragraphs 1 through 30, as if fully set forth herein.

32. On August 31, 2004, Coppola and Smolka arrested Mr. Martini.

33. Neither Coppola nor Smolka had probable cause to believe that Mr. Martini had violated any laws. Put simply, Mr. Martini did not engage in any conduct that warranted his arrest and detention.

34. As a result of these defendants' conduct, Mr. Martini was detained, and at all times he knew he was detained. Moreover, Mr. Martini did not consent to his confinement.

35. Because neither Coppola nor Smolka had probable cause to believe that Mr. Martini had violated any laws, the arrest of Mr. Martini was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

36. As a result of his arrest by Coppola and Smolka, Mr. Martini suffered physical and psychological injuries, and continues to suffer psychological harm.

SECOND CLAIM FOR RELIEF
(Coppola, Smolka and New York City--False Arrest)

37. Plaintiff John Martini repeats and realleges the allegations contained in paragraphs 1 through 36, as if fully set forth herein.

38. On August 31, 2004, Coppola and Smolka arrested Mr. Martini.

39. Neither Coppola nor Smolka had probable cause to believe that Mr. Martini had violated any laws. Put simply, Mr. Martini did not engage in any conduct that warranted his arrest and detention.

40. As a result of these defendants' conduct, Mr. Martini was detained, and at all times he knew he was detained. Moreover, Mr. Martini did not consent to his confinement.

41. Because neither Capella nor Smolka had probable cause to believe that Mr. Martini had violated any law or was a danger to himself or others, his arrest was unjustified.

42. As a result of his arrest by Coppola and Smolka, Mr. Martini suffered physical and psychological injuries, and continues to suffer, psychological harm.

43. As the employer of Smolka, defendant City is responsible for the injuries Mr. Martini suffered, and continues to suffers, as a result of the individual defendants' conduct pursuant to the doctrine of *respondeat superior*.

## THIRD CLAIM FOR RELIEF
(Coppola and Smolka--Malicious Prosecution)

44.     Plaintiff John Martini repeats and realleges the allegations contained in paragraphs 1 through 43, as if fully set forth herein.

45.     On August 31, 2004, Coppola and Smolka arrested Mr. Martini without probable cause, and they knew that Mr. Martini was arrested without probable cause.

46.     As a result of his arrest, Mr. Martini was prosecuted for the conduct for which he was arrested. Defendants Coppola and Smolka caused the commencement of the criminal prosecution against Mr. Martini.

47.     Following the commencement of the criminal prosecution, Mr. Martini remained detained as result of his arrest. He was required to appear in court to answer the baseless charges against him.

48.     Ultimately, the criminal prosecution commenced against Mr. Martin was terminated in his favor. On or about December 1, 2004, the New York County District Attorney's Office dismissed the charges against Mr. Martini, pursuant to CPL § 30.30.

49.     At all times relevant herein, defendants Coppola and Smolka acted with malice. They knew that Mr. Martini was actually innocent of the offenses with which he was charged.

50.     As such, the conduct of the defendants violated Mr. Martini's rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.

51.     As a result of his arrest and subsequent prosecution, Mr. Martini suffered, and continues to suffer, psychological harm.

FOURTH CLAIM FOR RELIEF
(Capella, Smolka and City of New York–Malicious Prosecution)

52. Mr. Martini repeats and realleges the allegations contained in paragraphs 1 through 51, as if fully set forth herein.

53. On August 31, 2004, Coppola and Smolka arrested Mr. Martini without probable cause, and they knew that Mr. Martini was arrested without probable cause.

54. As a result of his arrest, Mr. Martini was prosecuted for the conduct for which he was arrested. Defendants Coppola and Smolka caused the commencement of the criminal prosecution against Mr. Martini.

55. Following the commencement of the criminal prosecution, Mr. Martini remained detained as result of his arrest. He was required to appear in court to answer the baseless charges against him.

56. Ultimately, the criminal prosecution commenced against Mr. Martin was terminated in his favor. On or about December 1, 2004, the New York County District Attorney's Office dismissed the charges against Mr. Martini, pursuant to CPL § 30.30.

57. At all times relevant herein, defendants Coppola and Smolka acted with malice. They knew that Mr. Martini was actually innocent of the offenses with which he was charged.

58. As a result of his arrest and subsequent prosecution, Mr. Martini suffered, and continues to suffer, psychological harm.

59. As the employer of Coppola and Smolka defendant City is responsible for the injuries Mr. Martini suffered, and continues to suffer, as a result of their conduct pursuant to the doctrine of *respondeat superior*.

FIFTH CLAIM FOR RELIEF
(City, Smolka and Does/Roes Nos. 2-10--<u>Monell</u> and Supervisory Liability)

60. Mr. Martini repeats and realleges the allegations contained in paragraphs 1 through 59, as if fully set forth herein.

61. The arrest of Mr. Martini, like the scores if not hundreds of other persons arrested on West 35th Street, was the product of policies, practices, customs and usages of the City of New York, acting through the NYPD, that were the proximate cause of Mr. Martini's injuries. These policies were promulgated by, upon information and belief, Smolka and John Does and/or Jane Roes 2-10, and include, among others, (a) the arrest of persons lawfully participating in, observing, or in the vicinity of demonstrations, protests or other forms of public expression on August 31, 2004, during the Republican National Convention; (b) enforcement of an unconstitutional statute, New York City Administrative Code section 10.110, Parading Without a Permit; and (c) the application of that statute to sidewalk marches. Each such policy, practice, custom and usage caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

62. As a result of the foregoing policies and practices, Mr. Martini was deprived of his liberty.

63. As a result of the foregoing policies and practices, Mr. Martini suffered, and continues to suffer, psychological harm.

PRAYER FOR RELIEF

WHEREFORE, Mr. Martini prays for the following relief:

(a) compensatory damages in an amount to be determined at trial;

  (b)  punitive damages in an amount to be determined at trial;

  (c)  reasonable attorneys' fees;

  (d)  costs and expenses; and

  (e)  such other and further relief as is just and proper.

Dated: New York, New York
    November 21, 2005

        SCOTT A. KORENBAUM, ESQ.
        Attorney for Plaintiff John Martini
        111 Broadway, Suite 1305
        New York, New York 10006
        (212) 587-0018


      By:_____
        Scott A. Korenbaum (SK-8305)